**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARVIN L. WILLIAMS,** | ) | **CASE NO. 5:09 CV 1565** |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **EDWARD T. SHELDON, WARDEN,** | ) | **Magistrate Judge Kathleen Burke** |
| | ) | |
| Respondent. | ) | <u>**MEMORANDUM OPINION**</u> |

This matter is before the Court on the Report and Recommendation issued by Magistrate Judge Kathleen Burke. (Docket #28.) On July 9, 2009, Petitioner, Marvin L. Williams, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket #1.) On September 14, 2012, Williams field an Addendum to his July 9, 2009 Habeas Petition. (Docket #23.)

**Factual and Procedural Background**

As set forth by the Magistrate Judge, the factual and procedural history of this case is as follows:

**I. Factual Background**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied*, 129 S. Ct. 2878 (2009). The Ohio Ninth District Court of Appeals summarized the facts underlying Williams' conviction as follows:

{¶2} At about 12:39 a.m. on September 1, 2005, while on patrol in their cruiser, Officers Justin Ingham and Joseph Bodnar of the Akron Police Department observed a Plymouth Acclaim traveling westbound on Delia Avenue in Akron. On the afternoon of August 30, 2005, the owner of the Acclaim, Linda Gatlin, had reported the vehicle as being stolen, and the officers noticed that the car was included on a list that they had received at the beginning of their shift, identifying vehicles that had been reported as stolen. The officers began to follow the vehicle, which sped up rapidly and ran a stop sign. The officers turned on the overhead lights and sirens on their cruisers and began to pursue the Acclaim through a residential area as it turned a number of corners, running 18 stop signs and two red lights and reaching speeds of 60 to 70 m.p.h. in 25 m.p.h. zones. Officer Bodnar testified that people were standing on the sidewalks and near the sides of the streets and that cars were parked along the side of the street, while other officers testified that they did not see any people or traffic. When the vehicle came to a stop, four or five minutes after the chase began, Officer Bodnar and Officer Christopher Hutchinson, who had been called as a back-up, approached the driver's side of the vehicle and ordered Appellant to get out of the car. Appellant did not get out, and the officers pulled Appellant from the vehicle, made him lie prone on the ground, and handcuffed him. Appellant received a cut near his eye in the process. An ambulance was summoned and Appellant was examined and treated at the scene. In a tape recorded interview with a police sergeant at the scene, Appellant admitted that he did not have a driver's license. Appellant was indicted on September 9, 2005, on charges of receiving stolen property, a felony of the fourth degree, in violation of R.C. 2913.51(A); failure to comply with the order or signal of a police officer, a felony of the third degree, in violation of R.C. 2921.331(B); no operator's license, a misdemeanor of the first degree, in violation of R.C. 4507.02; failure to stop at a stop sign, a minor misdemeanor, in violation of R.C. 4511.12; and failure to stop at a red light, a minor misdemeanor, in violation of R.C. 4511.13.

{¶3} On November 27, 2005, just after 11:30 p.m., while Appellant was awaiting trial on the charges contained in the September 9 indictment, Officer Timothy Van Nostran and his partner, Officer Patrick Didyk, of the Akron Police Department, observed Appellant leaving a house on Copley Road, driving a blue Oldsmobile. The house had been the site of several previous drug busts, primarily involving crack cocaine. The Oldsmobile accelerated to a speed of approximately 60 m.p.h. in a 35 m.p.h. zone, and the officers pursued the vehicle with their overhead lights and sirens engaged. The Oldsmobile did not stop, but the driver opened his door while the vehicle was in motion, then closed the door and turned

onto a series of residential side streets. The vehicle reached speeds between 50 and 70 m.p.h., running several stop signs and coming within inches of cars parked on some of the side streets. Officer Van Nostran pulled his cruiser alongside the Oldsmobile. Appellant attempted to turn the Oldsmobile down another street, lost control, and struck the midsection of Officer Van Nostran's cruiser.

{¶4} Officer Van Nostran and Officer Hutchinson, who had again been called as a back-up, approached the driver's side of the Oldsmobile, while Officer Didyk secured the front-seat passenger in the Oldsmobile, Tracy Johnson. When the driver's door was opened, Officer Van Nostran and Officer Hutchinson commanded Appellant to show his hands and attempted to grab Appellant by the arm to pull him from the vehicle. Appellant repeatedly pulled away from the officers and retreated within the vehicle and did not comply with the request to show his hands. During the struggle, Officer Hutchinson broke his finger when he caught it in Appellant's clothing. To bring Appellant under control, Officer Van Nostran pulled out his baton and struck Appellant in the upper chest area. Appellant was eventually pulled from the car and made to lie face-down on the ground, but he continued to struggle, tucking his arms underneath his torso and continuing to ignore requests to show his hands. Officer Van Nostran struck Appellant in the lower leg with his baton and Officer Didyk also struck Appellant twice in the back with his fist. Finally, Officer Didyk stunned Appellant with his tazer, allowing the officers to gain control of Appellant's arms and handcuff him. An ambulance was summoned and Appellant, who was bleeding from the struggle, was taken to a hospital.

{¶5} Officer Van Nostran and Officer Didyk conducted an inventory search of the vehicle, which was not registered to Appellant but was not reported as stolen. The officers discovered what they believed to be a marijuana "blunt" - a hollowed-out cigar containing marijuana - on the passenger side floorboard and what appeared to be crumbs of crack cocaine on the driver side floorboard. A laboratory test confirmed that the crumbs contained cocaine. Another blunt was found on the ground near the driver's door, and $ 270 in cash was found in Appellant's sock. Officer Van Nostran then accompanied Appellant to the hospital, where Appellant was examined and treated. At the hospital, Appellant was advised of his Miranda rights. Officer Van Nostran testified that Appellant admitted to purchasing crack cocaine for Tracy Johnson; that Appellant admitted to having the crack in his hand during the car chase but didn't know where it went after he was removed from the car; that Appellant admitted to smoking marijuana that evening; and that Appellant stated he had attempted to escape because he did not have a driver's license. Officer

> Didyk and Officer Van Nostran testified that as they escorted Appellant out of the hospital later that night, Appellant dropped a small plastic baggie on the ground. Officer Didyk recovered the baggie, which contained objects resembling rocks of crack cocaine, and a subsequent lab test confirmed the presence of cocaine. A hospital security officer, who had watched surveillance camera footage from the time that Appellant was taken from the hospital, testified that he did not see Appellant drop anything or see the police officers stop to pick anything up from the floor.
>
> {¶6} Appellant was indicted on a supplemental indictment on charges of failure to comply with an order or signal of a police officer, a felony of the third degree, in violation of R.C. 2921.331(B); possession of cocaine in the amount of one to five grams, a felony of the fourth degree, in violation of R.C. 2925.11(A); illegal use or possession of drug paraphernalia, a misdemeanor of the fourth degree, in violation of R.C. 2925.14(C)(1); possession of marijuana, a minor misdemeanor, in violation of R.C. 2925.11(A); driving under suspension, a misdemeanor of the first degree, in violation of R.C. 4510.11; resisting arrest, a misdemeanor of the second degree, in violation of R.C. 2921.33(A); obstructing official business, a misdemeanor of the second degree, in violation of R.C. 2921.31(A); and reckless operation, a minor misdemeanor, in violation of R.C. 4511.20. The cocaine charge was later amended to possession of cocaine in an amount less than one gram, a felony of the fifth degree, in violation of R.C. 2925.11(A).

Doc. 15, Exhibit 15, State v. Williams, Case No. CA-23176 ("Williams I").

## II. Procedural History

### A. State Conviction

As set forth above, Williams was indicted on thirteen separate offenses, which arose from two separate incidents. With regard to the first incident, Williams was indicted on the following five offenses: Count 1 - receiving stolen property in violation of Ohio Revised Code § 2913.51(A); Count 2 - failure to comply with order or signal of police officer in violation of Ohio Revised Code § 2921.331(B); Count 3 - no operator's license in violation of Ohio Revised Code § 4507.02; Count 4 - failure to stop at a stop sign in violation of Ohio Revised Code § 4511.12; and Count 5 - failure to stop at a red light in violation of Ohio Revised Code § 4511.13. Doc. 15, Exhibit 1. With regard to the second incident, Williams was indicted on the following eight offenses: Count 6 - failure to comply with order or signal of police officer in violation of Ohio Revised Code § 2921.331(B); Count 7 - possession of cocaine in violation of Ohio Revised Code § 2925.11(A); Count 8 - illegal use or possession of drug paraphernalia in violation of Ohio Revised Code § 2925.14(C)(1), Count 9 - possession of marijuana in violation of

-4-

Ohio Revised Code § 2925.11(A); Count 10 - driving under suspension in violation of Ohio Revised Code § 4510.11; Count 11 - resisting arrest in violation of Ohio Revised Code § 2921.33(A); Count 12 - obstructing official business in violation of Ohio Revised Code § 2921.31(A); and Count 13 - reckless operation in violation of Ohio Revised Code § 4511.20. Doc. 15, Exhibit 3. Williams plead not guilty to all of the charges. Doc. 15, Exhibit 4.

Williams elected to have certain charges tried to the bench and others to a jury. The trial commenced on February 9, 2006. Doc. 15, Exhibit 6. At the conclusion of the State's case, the trial court granted Williams' motion for acquittal pursuant to Ohio Crim. Rule 29 on two counts (Count 1 - receiving stolen property and Count 10 - driving under suspension). Doc. 15, Exhibit 6. On February 15, 2006, the jury returned a verdict finding Williams guilty of the remaining counts that were tried to the jury (Count 2 - failure to comply with order or signal of a police officer, Count 3 – no operator's license, Count 6 – failure to comply with order or signal of a police officer, Count 7 - possession of cocaine, Count 8 - illegal use or possession of drug paraphernalia, Count 11 - resisting arrest, and Count 12 - obstructing official business). The trial court then found Williams guilty of the offenses that were tried to the bench (Count 4 - failure to stop for a stop sign, Count 5 - failure to stop for a red light, Count 9 - possession of marijuana, and Count 13 - reckless operation). Doc. 15, Exhibit 6.

On March 21, 2006, with regard to the felony offenses, the trial court sentenced Williams to serve a prison term of 4 years on Count 1 (failure to comply with order or signal of police officer), 5 years on Count 6 (failure to comply with order or signal of police officer), and 9 months on the Count 7 (possession of cocaine). Doc. 15, Exhibit 10. The trial court ordered that these sentences be served consecutively, for an aggregate sentence of 9 years and 9 months in prison. Doc. 15, Exhibit 10. With regard to the misdemeanor offenses, the trial court sentenced Williams to jail terms of 6 months on Count 3 (no operator's license), 30 days on the Count 8 (illegal use or possession of drug paraphernalia), 90 days on Count 11 (resisting arrest), and 90 days on Count 12 (obstructing official business). Doc. 15, Exhibit 10. The sentences for the misdemeanor offenses were ordered to be served concurrently with the sentences for the felony offenses. Doc. 15, Exhibit 10. The trial court declined to impose fines for the minor misdemeanor offenses (Count 4 -failure to stop at a stop sign, Count 5 - failure stop at a red light, Count 9 - possession of marijuana, and Count 13 - reckless operation) due to Williams' indigent status. Doc. 15, Exhibit 10.

**B.    Direct Appeal**

On April 4, 2006, Williams, with the assistance of new counsel, filed a timely notice of appeal in the Ninth District Court of Appeals. Doc. 15, Exhibit 12. In his merit brief, Williams asserted the following four assignments of error:

> 1. The trial court erred in allowing evidence of similar acts into evidence.
>
> 2. The state withheld evidence from the defense until the day of trial causing unfair surprise and denied appellant the opportunity to challenge the admissibility of the evidence to his detriment.
>
> 3. Appellant's convictions were based upon insufficient evidence and against the manifest weight of evidence. The trial court erred by denying Appellant's Crim. R. 29 motion.
>
> 4. The trial court erred by failing to consider and weigh the factors required under R.C. 2929.331, 2929.12 and 2929.13 when sentencing Appellant on two counts of failure to comply.

Doc. 15, Exhibit 13. On August 22, 2006, the State filed its brief. Doc. 15, Exhibit 14. On February 14, 2007, the court of appeals dismissed Williams' appeal in part for lack of a final, appealable order with regard to the minor misdemeanor offenses because the trial court's sentencing entry did not include sentences for those offenses. The court of appeals overruled Williams' assignments of error relating to the other offenses and affirmed Williams' convictions on those offenses. Doc. 15, Exhibit 15, *Williams I*.

Williams did not timely appeal this decision to the Supreme Court of Ohio. On May 9, 2008, Williams, pro se, filed a notice of appeal and motion for leave to file delayed appeal in the Supreme Court of Ohio. Doc. 15, Exhibits 19-20. Williams argued that he did not receive a copy of the appellate court's judgment affirming his convictions until "on or about the month of July, 2007." Doc. 15, Exhibit 20, p. 1. On July 9, 2008, the Ohio Supreme Court denied Williams leave to file a delayed appeal. Doc. 15, Exhibit 21.

### C. Nunc Pro Tunc Journal Entry Dated February 22, 2007 and Subsequent Proceedings

Meanwhile, on February 22, 2007, after the partial dismissal of Williams' appeal, the trial court issued a nunc pro tunc sentencing entry imposing a $100.00 fine for each of the minor misdemeanors. The trial court then suspended the fines due to Williams' indigent status. Doc. 15, Exhibit 16.

On August 5, 2008, Williams filed a pro se motion seeking a final appealable order so that he could further appeal his case. Doc. 15, Exhibit 22.

On October 28, 2008, Williams filed a Notice of Appeal and Request to Proceed with the Ninth District Court of Appeals. Williams sought to appeal the February 2007 nunc pro tunc sentencing entry, which he alleged he did not receive until October of 2008. Doc. 15, Exhibit 23. On January 5, 2009, the court of appeals issued an order striking the Notice of Appeal from the record because

it was filed in a completed criminal appeal and the court no longer had jurisdiction to consider the pleading. Doc. 15, Exhibit 24.

On January 22, 2009, Williams re-filed his Notice of Appeal in the Ninth District Court of Appeals. Doc. 15, Exhibit 25. On the same day, Williams also filed an Application for Reconsideration under App. R. 26(A). Doc. 15, Exhibit 26. On February 6, 2009, the court of appeals struck all of the filings because Williams did not include a proper certificate of service. Doc. 15, Exhibit 28.

Williams did not appeal this decision to the Supreme Court of Ohio.

### F. Nunc Pro Tunc Journal Entry Dated June 24, 2009

On June 24, 2009, the trial court issued a nunc pro tunc sentencing entry to correct the February 15, 2007 nunc pro tunc sentencing entry because it did not contain the proper post-release control notification. Doc. 15, Exhibit 29. The nunc pro tunc sentencing entry informed Williams that he would be subject to post-release control but did not provide the penalty for violating post-release control. Doc. 15, Exhibit 29. Williams did not appeal from the nunc pro tunc journal entry dated June 24, 2009.

### G. Federal Habeas Corpus

On June 26, 2009, Williams, pro se, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. In his petition, Williams asserts the following four grounds for relief:

> **GROUND ONE:** The trial court sentenced me to nine years and ten months, eleven charges from a two count indictment all in one trial proceeding was split and I was only sentenced on seven.
>
> **Supporting Facts:** One of my appeals court judges from the ninth district court dissented for this reason. The other judges erred by affirming the trials conviction and sentence on seven charges and dismissed part of my appeal for an admitted lack of a final appealable order, which they remanded back after acted without admitted nonjurisdiction. All charges were part of the same course of conduct, and one trial by jury presided over all the charges in one trial. The Appellant asserts that the trial erred by finding the appellant guilty on all count and sentencing him on seven and not sentencing him on the remaining charges creating a moot judgment entry since it was not a final appealable order.
>
> **GROUND TWO:** Two appellate court judges acted in absence of all jurisdiction when they affirmed the conviction and sentence of the trial

>court, admitting also "No final appealable order."
>
>**GROUND THREE:** Stated in the Decision and Journal Entry from the judges that affirmed the trials conviction and sentence, these two judges took an authority in the absence there of and constituted the journal entry of the trial court to be a journal entry of judgment. (page 23). This ruling took place before the trial had a chance to fix my journal entry.
>
>**GROUND FOUR:** I see how the judges manipulated this whole ordeal what stood out in my trial caused my trial court attorney to put in criminal rule 29 motion after the evidence in my trial these three judges conspired in my journal entry situation.
>
>**Supporting Facts:** The trial court judge and the appeals court together conspired in this situation with regards to my journal entry.

Doc. 1, pp. 6-14. On that same day, Williams filed a Motion to Stay in Abeyance. Doc. 3. On August 19, 2009, this Court issued an Order dismissing the case without prejudice, pending exhaustion of Williams' state court remedies. Doc. 6.

**H. Nunc Pro Tunc Journal Entry Dated August 21, 2009 and Subsequent Proceedings**

On August 21, 2009, the state trial court issued a second nunc pro tunc sentencing entry to correct the post-release control notification in the previous sentencing entries. Doc. 15, Exhibit 30. This entry reiterated the entirety of Williams' sentence and included Williams' post-release control term and also the penalty for violating any post-release control conditions. Doc. 15, Exhibit 30.

On September 22, 2009, Williams, pro se, appealed from the trial court's August 21, 2009 nunc pro tunc sentencing entry to the Ninth District Court of Appeals. In his merit brief, Williams raised the following assignments of error:

>1. Appellant's conviction was based upon insufficient evidence and against the manifest weight of the evidence. Doc, 15, Exhibit 32.
>
>2. The trial court erred by denying the Appellant's Crim, R. 29 motion. The trial court erred by refusing to rule on the Appellant's supplemental motion for acquittal, Crim. R. 29 at the close of the case in the trial court.
>
>3. The trial court erred and abused its discretion by not permitting the jury to view evidence in a timely manner and in that poisoned the minds of the jury creating a miscarriage of justice.
>
>4. When counsel's performance is deficient in the conduct of trial

-8-

> coupled with prejudice inuring to the detriment of the Appellant, his right to a fair trial and effective assistance of counsel are violated contra to the Ohio and Federal Constitution.
>
> 5. The trial court erred by providing Appellant with the journal entry in light of this appeal. The trial court is denying Appellant due process of law in that the journal entry has false statements and the appearance that Appellant was at a sentencing hearing February 15, 2007, and was afforded all right's pursuant to Crim.R. 32.

Doc. 15, Exhibit 39. On April 7, 2010, the State filed its brief. Doc. 15, Exhibit 40. Williams filed two additional reply briefs on April 23, 2010 and May 7, 2010. Doc. 15, Exhibits 41 and 42. On October 20, 2010, the court of appeals issued a decision finding that the trial court's attempt to remedy Williams' defective post-release control notification by way of a nunc pro tunc entry was invalid because Williams was originally sentenced before July 11, 2006. Doc. 15, Exhibit 43, Case No. CA-24990 ("*Williams II*"). The court of appeals concluded that a trial court must conduct a de novo sentencing hearing to correct a pre-July 11, 2006 criminal sentence. *Williams II* at ¶ 8. As such, the court of appeals vacated Williams' sentence, along with the trial court's nunc pro tunc sentencing entries, and remanded the case for the trial court to conduct a de novo sentencing hearing.

### I. 2011 De Novo Sentencing Hearing and Subsequent Proceedings

After remand, the trial court appointed counsel to represent Williams for the de novo sentencing hearing. On January 4, 2011, Williams, through counsel, filed a motion to dismiss the case, arguing that the trial court no longer had jurisdiction to sentence him because the undue delay violated his rights to a speedy trial. Doc. 15, Exhibit 46. Williams also filed a pro se addendum to his attorney's motion. Doc. 15, Exhibit 47. On January 10, 2011, the State filed a memorandum in response to the motion to dismiss. Doc. 15, Exhibit 45. On January 18, 2011, the trial court denied Williams' motion to dismiss and conducted a de novo sentencing hearing. Doc. 15, Exhibit 49. The trial court imposed the same term of imprisonment as it had before, for an aggregate sentence of 9 years and 9 months in prison. Doc. 15, Exhibit 49. The trial court also imposed a $100 fine for each of Williams' minor misdemeanors convictions but suspended those fines due to Williams' indigent status. Doc. 15, Exhibit 49. The trial court then gave the required post-release control notification. Doc. 15, Exhibit 49. The trial court also advised Williams of his right to appeal and that the court would appoint counsel to represent him in light of his indigent circumstances. Doc. 15, Exhibit 49. Williams waived appointment of counsel in open court and informed the trial court that he wanted to represent himself. Doc. 15, Exhibits 49.

On February 23, 2011, Williams, pro se, filed a timely notice of appeal to the Ninth District Court of Appeals. Doc. 15, Exhibit 47. In his merit brief, Williams raised the following assignments of error:

1. The trial court erred and violated the Appellant's right to a fast and speedy trial held within the Sixth Amendment of the United States Constitution by imposing a sentence in this case on January 18, 2011, five years and four months post indictment and four years and eleven months after the Appellant's conviction.

2. The trial court erred by imposing a sentence on January 18, 2011 when imposing a sentence on counts four, five, nine, and thirteen which constituted an unjustifiable delay in sentencing when the sentencing hearing in regards to these charges and or counts was held on March 21, 2006 and no sentence was imposed on these counts at this hearing and the trial court had no reason for this delay.

3. The trial court is violating the appellant's rights in due process of law held within the Fifth and Fourteenth Amendments of the United States Constitution and Article One, Section Sixteen of the Ohio Constitution in redress in court with regards to the journal entry concerning the sentencing of the Appellant on January 18, 2011, which is still void contrary to the instructions given by the Ninth District Court of Appeals.

4. The trial court erred and abused its discretion by not permitting the jury to view evidence in a timely manner and in that poisoned the minds of the jury creating a miscarriage of justice.

5. The trial court erred by denying the Appellant's Criminal Rule 29 motion and also by refusing to rule on the Appellant's Criminal Rule 29 for acquittal at the close of the case in the trial court.

Doc. 15, Exhibit 51. The State filed its brief on May 5, 2011. Doc. 15, Exhibit 52. Williams filed a reply brief on May 18, 2011. Doc. 15, Exhibit 53. On November 23, 2011, the court of appeals affirmed the judgment of the trial court. Doc. 15, Exhibit 54, Case No. CA-25827 (*Williams III*).

On December 28, 2011, Williams, pro se, filed a timely notice of appeal to the Supreme Court of Ohio. Doc. 15, Exhibit 55. In his memorandum in support of jurisdiction, Williams set forth the following propositions of law:

1. Criminal Rule 32(A) states within its contents that the sentence in a matter of a criminal conviction shall be imposed without unnecessary delay.

-10-

>    2.   Sup R. 39(B)(4) states that a hearing for sentencing as quoted "The court shall impose sentence or hold a sentencing hearing within fifteen days of the verdict or finding of guilt."
>
>    3.   Criminal Rule 29(A), brings to light a violation of abuse of discretion.

Doc. 15, Exhibit 56. On March 7, 2012, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. Doc. 15, Exhibit 58.

### J.   Reopened Federal Habeas Corpus

On March 26, 2012, Williams filed a motion to reopen his federal habeas corpus action, stating that he had now exhausted all of his state remedies. Doc. 7. Williams also asked for leave to add an addendum to his petition. Doc. 7. On May 22, 2012, this Court granted Williams' motion to reopen. Doc. 10.

On July 23, 2012, Respondent filed a motion to dismiss Williams' habeas petition, arguing that the claims presented by Williams are moot or are not cognizable on federal habeas review. Doc. 15. On August 22, 2012, the Court granted Williams leave until September 24, 2012, to file an addendum to his habeas petition setting forth any new grounds for relief not contained in his original habeas petition. Doc. 18. On September 13, 2012, Williams filed a "Traverse" to Respondent's motion to dismiss. Doc. 22.

In addition, on September 14, 2012, with leave of Court, Williams filed an addendum to his habeas petition asserting three additional grounds for relief. Doc. 23. On November 26, 2012, Respondent, with leave of Court, filed a supplement to his motion to dismiss arguing that Williams' new grounds for relief are not cognizable on federal habeas review or have been procedurally defaulted. Doc. 25. On December 14, 2012, Williams filed a brief in opposition to Respondent's supplement to his motion to dismiss. Doc. 26. On January 11, 2013, Respondent filed a reply brief in support of his supplement to his motion to dismiss. Doc. 27.

January 23, 2013 Report and Recommendation (Docket #28) at pp. 2-14.  (Footnotes omitted.)

### Report and Recommendation

On January 23, 2013, the Magistrate Judge issued her Report and Recommendation.

(Docket #28.)  The Magistrate Judge recommends that the Court dismiss the four grounds for

relief set forth in Williams' July 2009 Habeas Petition on the basis that the claims are moot and

are not cognizable on Federal habeas review; dismiss Williams' Fifth and Fourteenth Amendment due process claim set forth in the September 2012 Addendum to Williams' 2009 Habeas Petition on the basis that Williams has procedurally defaulted that claim; and, deny Respondent's Motion to Dismiss with regard to the Sixth Amendment speedy trial claim set forth in the September 2012 Addendum to Williams' 2009 Habeas Petition on the basis that the speedy trial claim is cognizable on Federal habeas review and Williams has exhausted his state remedies with regard to that claim.

On February 6, 2013, Respondent filed Objections to the Magistrate Judge's Report and Recommendation. (Docket #29.) Respondent objects only to the Magistrate Judge's recommendation as to Williams' Sixth Amendment speedy trial claim.

Williams did not file objections to the Report and Recommendation. On February 21, 2013, Williams filed a Response to the Objections filed by Respondent. (Docket #30.)

**Standard of Review for a Magistrate Judge's Report and Recommendation**

The applicable standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to that report. When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case de novo. FED. R. CIV. P. 72(b) states:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

The text of Rule 72(b) addresses only the review of reports to which objections have been made; it does not indicate the appropriate standard of review for those reports to which no objections have been properly made. The Advisory Committee on Civil Rules commented on a district

court's review of *unopposed* reports by magistrate judges.  In regard to subsection (b) of Rule 72, the advisory committee stated:  "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  FED. R. CIV. P. 72 advisory committee's notes (citation omitted).

The U.S. Supreme Court stated in *Thomas v. Arn*, 474 U.S. 140, 150 (1985):  "It does not appear that Congress intended to require district court review of a magistrate judge's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."

## Discussion

The Magistrate Judge recommends that the Court dismiss the four Grounds for Relief set forth in Williams' July 2009 Habeas Petition on the basis that the claims are moot and are not cognizable on Federal habeas review.  Neither party objects to this recommendation.  The Court has reviewed the Report and Recommendation and agrees with the findings of the Magistrate Judge.  The four Grounds for Relief set forth in Williams' July 2009 Habeas Petition are hereby dismissed.

Williams sets forth three supplemental Grounds for Relief in his 2012 Addendum to his July 2009 Habeas Petition, all of which raise virtually the same argument.  In each of his supplemental Grounds for Relief, Williams argues that his 2011 resentencing hearing violated his due process rights under the Fifth and Fourteenth Amendments, as well as his right to a speedy trial under the Sixth Amendment.

### Due Process Claim

The Magistrate Judge recommends that the Court dismiss Williams' Fifth and Fourteenth Amendment due process claim, included in the September 2012 Addendum to his Habeas

Petition, on the basis that Williams has procedurally defaulted that claim.  Neither party objects to this recommendation.  The Court has reviewed the Report and Recommendation and agrees with the findings of the Magistrate Judge.  Accordingly, Williams' due process claim is dismissed.

### Speedy Trial Claim

The Magistrate Judge recommends that the Court deny Respondent's Motion to Dismiss with regard to Williams' Sixth Amendment speedy trial claim, included in the September 2012 addendum to Williams' 2009 Habeas Petition, on the basis that the speedy trial claim is cognizable on Federal habeas review and Williams has exhausted his state remedies with regard to that claim.  Respondent objects to this recommendation, arguing that Williams procedurally defaulted on his speedy trial claim; has failed to demonstrate the cause and prejudice required to salvage his claim; and, that there is no established right to a speedy resentencing after the conviction and sentence have been affirmed on appeal.  Williams filed no objections to the Magistrate Judge's recommendation.

As set forth above, Williams was resentenced on January 18, 2011 to correct sentencing errors that had been previously been addressed through nunc pro tunc entries that were determined by the Ohio Court of Appeals to be insufficient.  The nunc pro tunc entries were entered to address the fact that during his original sentencing, the Trial Court did not impose a fine for the minor misdemeanors of which Williams was found guilty and did not include the required post-release control notification.  At resentencing, the Trial Court imposed the same term of imprisonment as it had before, amounting to an aggregate sentence of 9 years and 9 months in prison. Doc. 15, Exhibit 49.  The Trial Court imposed a $100 fine for each of Williams' minor misdemeanors convictions but suspended those fines due to Williams' indigent

status. Doc. 15, Exhibit 49. The Trial Court also gave the required post-release control notification. Doc. 15, Exhibit 49.  Williams' conviction and sentence were affirmed on appeal.

There is no United States Supreme Court case holding that the Sixth Amendment's right to a speedy trial extends to remands for resentencing to correct sentencing errors after the conviction and sentence are affirmed on appeal.  *United States v. Sanders*, 452 F.3d 577, 577-78 (6th Cir. Ohio 2006).  Accordingly, Williams' claim speedy trial claim is not cognizable on Federal habeas review and must be dismissed.

## Conclusion

Based upon a thorough review of the Magistrate Judge's Report and Recommendation; the Briefs submitted by the Parties; all filings of record; and, the law applicable thereto, the Magistrate Judge's Report and Recommendation is ADOPTED IN PART and REJECTED IN PART.

The Court hereby ADOPTS the Magistrate Judge's recommendation that the Court dismiss the four grounds for relief set forth in Williams' July 2009 Habeas Petition because the claims are moot and are not cognizable on Federal habeas review.  The Court hereby ADOPTS the Magistrate Judge's recommendation that the Court dismiss the due process claim set forth in the September 2012 addendum to Williams' Habeas Petition because Williams has procedurally defaulted that claim.

The Court hereby REJECTS the Magistrate Judge's recommendation that the Court deny Respondent's Motion to Dismiss with regard to Williams' Sixth Amendment speedy trial claim set forth in the September 2012 addendum to Williams' Habeas Petition because that claim is not cognizable on Federal habeas review.

Respondent's Motion to Dismiss (Docket #15) is hereby GRANTED.   For the reasons

stated above, all of the Grounds for Relief raised by Williams, in both is July 2009 Habeas Petition and his September 2012 addendum his July 2009 Habeas Petition, are DISMISSED. This case is hereby TERMINATED.

## Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, the Court must determine whether to grant a certificate of appealability as to any of the claims presented in the Petition.  28 U.S.C. § 2253 provides, in part, as follows:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from --
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

Where a district court has rejected the constitutional claims on the merits, the petitioner must demonstrate only that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack*, 529 U.S. at 484.  Where the petition has been denied on a procedural ground without reaching the underlying constitutional claims, the court must find that the petitioner has demonstrated that reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right *and* that reasonable jurists could debate whether the district court was correct in its procedural ruling.  *Id.*  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition

or that the petitioner should be allowed to proceed further." *Id.*

For the reasons stated in the Magistrate Judge's Report and Recommendation, a reasonable jurist could not conclude that dismissal of the Petition is in error or that Williams should be permitted to proceed further.  Accordingly, the Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

                                    s/Donald C. Nugent
                                   DONALD C. NUGENT
                                   United States District Judge

DATED: February 22, 2013